UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELMO SHROPSHIRE, d/b/a ELMO PUBLISHING, <br><br> Plaintiff, <br><br> v. <br><br> AUBREY CANNING, JR., and PATRICIA TRIGG d/b/a KRIS PUBLISHING, <br><br> Defendants. | Case No.: 10-CV-01941-LHK <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT |

"Grandma Got Run Over By A Reindeer" is a holiday song written by Randy Brooks in 1979 and performed by Elmo Shropshire and Patsy Trigg. In this copyright infringement suit, Plaintiff Elmo Shropshire claims that he co-owns the copyright to the musical composition of the song and that Defendant Aubrey Canning, Jr., who resides in eastern (Ontario) Canada, uploaded, and failed to remove, an infringing video on YouTube. Presently before the Court is Defendant's motion to dismiss Plaintiff's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. Pursuant to Civil Local Rule 7-1(b), the Court deems Defendant's motion to dismiss appropriate for resolution without oral argument and vacates the August 25, 2011 motion hearing. The August 25, 2011 case management conference remains as set. Having considered the submissions of the parties and the

1

Case No.: 10-CV-01941-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

relevant law, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion to dismiss.

### I. Background

Plaintiff Elmo Shropshire, who also goes by a stage name of "Dr. Elmo," is known for his performance of the song "Grandma Got Run Over By A Reindeer" (hereinafter "Grandma song"). Pl.'s Second Am. Compl. ("SAC") [dkt. #61] ¶ 11. The copyright to the underlying musical composition of the song is co-owned by Plaintiff, d/b/a Elmo Publishing, and by Patricia Trigg, d/b/a Kris Publishing. *Id.* at ¶ 12. Under a 1996 Co-Publishing Agreement, another entity, Evergreen Copyrights, acted as the copyright administrator of the musical composition of the Grandma song for Elmo Publishing and Kris Publishing under an "Exclusive Copyright Administration Agreement" until September 2010 when BMG Rights Management acquired Evergreen Copyrights. *Id.* ¶ 13. BMG is now the copyright administrator of the composition under the terms of the same Agreement. *Id.* Pursuant to the terms of that Agreement, BMG is "the exclusive administrator of the copyrights and renewal rights in the Compositions and shall have the full and exclusive right to control the administration of the Compositions," and has the exclusive right to negotiate "all contracts and licenses" for the musical composition to "Grandma." *See* May 14, 1996 "Exclusive Copyright Administration Agreement," attached as Exh. 4 to SAC. BMG is also the "third party 'tie breaker'" if the co-owners are in disagreement regarding any license. *Id.* Plaintiff alleges that he is entitled to 22.5% of the royalties from the Grandma song. SAC ¶ 17.

Plaintiff alleges that in or about December 2007, Defendant Canning posted a video on YouTube, which combined Christmas-related pictures with audio of a Canadian musical group, "The Irish Rovers," singing the Grandma song. *Id.* at ¶¶ 18, 26. According to the allegations in the SAC, YouTube requires its users to accept a Terms of Service agreement prior to uploading videos, an agreement which notifies users about YouTube's Mountain View, California location and warns users about copyright infringement. *Id*. at ¶¶ 22-25. On December 25, 2009, Plaintiff's office manager, Pam Wendell, contacted Defendant informing him that his unlicensed video infringed on Plaintiff's copyright and requesting that Defendant remove the video from YouTube. *Id.* at ¶ 42. Defendant responded that he would be willing to comply with Plaintiff's licensing requirements.

2

Case No.: 10-CV-01941-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

*Id.* at ¶ 43.  Defendant did not, however, remove the video.  *Id.*  On December 27, 2009, Ms. Wendell sent Defendant another e-mail, requesting that Defendant either license the song or remove the video.  *Id.* at ¶ 45.  Ms Wendell sent an additional e-mail on December 28, 2009, explaining that in order to continue to use the Grandma song, Defendant would need to license the recording from the Irish Rovers and the composition from the publishers.  *Id.* at ¶ 46; *see also* December 28, 2009 E-mail from Pam Wendell to Aubrey Canning, Jr., attached as Exh. 7 to SAC.  Defendant, however, still did not remove the video.

Instead, Defendant replied to Plaintiff's representative by e-mail on December 28, 2009, that Plaintiff should "contact the video site managers and get my video removed.  I won't be doing it."  SAC ¶ 49, December 28, 2009 E-mail from Aubrey Canning, Jr., to Pam Wendell, attached as Exh. 6 to SAC.  The next day, December 29, 2009, Plaintiff filed a "Copyright Infringement Notification" with YouTube pursuant to 17 U.S.C. § 512(c), requesting the removal of Defendant's video.  SAC at ¶ 50.  YouTube removed the video, but then reinstated it on January 4, 2010 after Defendant filed a counter-notice with YouTube.  *Id.* at ¶¶ 52-53, 58.  In that counter-notice, Defendant stated that "no part of my Grandma video is a copy of any original work made by [the Plaintiff]" and that he had a "good faith belief the material was removed due to a mistake or misidentification of the material to be removed or disabled."  *See* January 4, 2010 Counter-Notice, attached as Exh. 1 to SAC.  After YouTube reinstated the video, Plaintiff contacted YouTube numerous times requesting that the video be taken down.  SAC ¶¶ 61-62.  Those efforts were ultimately unsuccessful, as YouTube refused to remove the video unless Plaintiff filed this lawsuit against Defendant.  *Id.* at ¶ 62.

On May 3, 2010, Plaintiff filed his original complaint against YouTube, Inc. and Aubrey Canning, Jr. pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512.  Plaintiff voluntarily dismissed YouTube, Inc. from this litigation on June 4, 2010.  *See* June 4, 2010 "Notice of Voluntary Dismissal with Prejudice of YouTube, Inc." [dkt. #6].  On October 18, 2010, Plaintiff filed an amended complaint, adding a claim of direct copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 106 based on Defendant's unlicensed creation of the video synchronizing images of reindeer with audio of the Irish Rovers singing the Grandma song.

3

Case No.: 10-CV-01941-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

*See* "First Amended Complaint for Copyright Infringement" [dkt. #33].  This Court granted Defendant's motion to dismiss the First Amended Complaint on January 11, 2011 with leave to amend.  *See* "Order Granting Defendant's Motion to Dismiss" [dkt. #60].

Plaintiff filed the SAC on February 10, 2011, against Defendant and Patricia Trigg, d/b/a Kris Publishing.  The SAC includes three claims: (1) copyright infringement against Defendant; (2) misrepresentation under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512 against Defendant; and (3) declaratory relief against Defendant and Trigg.

## II. Governing Legal Standards

### A. Extraterritoriality as subject matter jurisdiction or element of the claim

The Court must first decide whether to address Defendant Canning's motion to dismiss the copyright infringement claim under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).  The heart of Defendant's argument is that the alleged infringing act – uploading the Grandma video to YouTube – took place in Canada and thus falls outside the reach of the Copyright Act.  There is currently no clear consensus among the courts regarding whether the issue of the extraterritorial reach of the Copyright Act should be treated as a matter of subject matter jurisdiction, or should instead be treated as an element of a claim.

The Ninth Circuit has treated arguments about the extraterritorial effect of the Copyright Act both ways.  For example, in *Peter Starr Prod. Co. v. Twin Continental Films*, 783 F.2d 1440 (9th Cir. 1986), the Ninth Circuit treated extraterritoriality as an issue of subject matter jurisdiction, finding that "infringing actions that take place entirely outside the United States are not actionable in United States federal courts."  *Id.* at 1442.  Conversely, in *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088 (9th Cir. 1994), the Ninth Circuit addressed extraterritoriality as an element of the claim for copyright infringement.  *Id.* at 1095 ("wholly extraterritorial acts of infringement cannot support a claim under the Copyright Act").  The *Subafilms* decision did not provide a definitive answer, but instead merely noted that even though *Peter Starr* addressed extraterritoriality as jurisdictional, the *Peter Starr* decision found both that jurisdiction existed and that a claim had been stated.  *Id.* at 1091 fn. 5 ("Even if the *Peter Starr* court erred in framing the subject matter jurisdiction inquiry as coextensive with the question of whether the allegations in the

4

complaint stated a good cause of action, a question we do not decide, . . . it undoubtedly held that a claim had been stated.").

In 2006, the U.S. Supreme Court addressed the confusion surrounding the distinction between 12(b)(1) motions and 12(b)(6) motions in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006). *Arbaugh* warned district courts against deciding questions of failure to state a claim as questions of subject matter jurisdiction. Specifically, *Arbaugh* held that statutory limitations should presumptively be treated as elements of the claim instead of as jurisdictional requirements unless Congress explicitly provides otherwise. "But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516.

The Ninth Circuit has not yet interpreted the impact of *Arbaugh* on how to treat extraterritoriality with respect to the Copyright Act. One case from this district decided since *Arbaugh*, *Doe v. Geller,* 533 F. Supp. 2d 996 (N.D. Cal. 2008), considered whether extraterritoriality should be decided as a matter of subject matter jurisdiction. The *Geller* decision noted that "copyright law is especially unsettled when it comes to cross-border communications." *Id*. at 1003. Ultimately, the court in *Geller* dismissed the complaint for lack of personal jurisdiction without reaching the "neither clear nor definitive" question of subject matter jurisdiction. *Id*. at 1004.

Outside of the Ninth Circuit, numerous courts have followed *Arbaugh* and held that extraterritoriality must be treated as an element of a copyright infringement claim rather than as a jurisdictional question. *See, e.g., Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1368 (Fed. Cir. 2008) ("There is no indication that Congress intended the extraterritorial limitations on the scope of the Copyright Act to limit the subject matter jurisdiction of the federal courts. Accordingly, we hold that the issue is properly treated as an element of the claim which must be proven before relief can be granted, not a question of subject matter jurisdiction"); *Wood v. Houghton Mifflin Harcourt Pub. Co.*, 569 F. Supp. 2d 1135, 1138 (D. Colo. 2008) ("Given recent Supreme Court guidance regarding subject matter jurisdiction, however, this Court concludes that

1    the extraterritorial application of United States copyright laws represents an element of [the

2    plaintiff's] claim for copyright infringement and does not affect subject matter jurisdiction").

3          Although not binding, the Court finds the Federal Circuit's decision in *Litecubes* well-

4    reasoned and persuasive.  As the Federal Circuit ruled, "whether an accused action is within the

5    extraterritorial limitation should be treated as an element of the claim, not a predicate for subject

6    matter jurisdiction, unless Congress has clearly provided that the limitation is jurisdictional."

7    *Litecubes*, 523 F.3d at 1267 (citing *Arbaugh*, 546 U.S. at 516 ("[W]hen Congress does not rank a

8    statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-

9    jurisdictional in character.").  Moreover, "[t]here is no indication that Congress intended the

10   extraterritorial limitations on the scope of the Copyright Act to limit the subject matter jurisdiction

11   of the federal courts." *Id*. at 1368.  Finally, as acknowledged in *Litecubes*, the Ninth Circuit's

12   *Subafilms* decision held that "the mere authorization of acts of infringement that are not cognizable

13   under the United States copyright laws because they occur entirely outside of the United States

14   *does not state a claim* for infringement under the Copyright Act." *Subafilms*, 24 F.3d at 1099

15   (emphasis added).  In the pending action, therefore, the Court finds that *Arbaugh* requires

16   extraterritoriality to be decided as an element of a claim for copyright infringement rather than an

17   issue of subject matter jurisdiction.

18         **B.  Legal standard under Rule 12(b)(6)**

19       A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

20   sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In considering

21   whether the complaint is sufficient to state a claim, the court must accept as true all of the factual

22   allegations contained in the complaint. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  However,

23   the court need not accept as true "allegations that contradict matters properly subject to judicial

24   notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or

25   unreasonable inferences." *St. Clare v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d

26   1049, 1055 (9th Cir. 2008).  While a complaint need not allege detailed factual allegations, it "must

27   contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

28   face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

### III. Analysis

#### A. Copyright Infringement

Section 106 of the Copyright Act provides that copyright owners have exclusive rights to: 1) reproduce copyrighted work; 2) prepare derivative works; 3) distribute and sell copies; 4) perform the copyrighted work; and 5) display the copyright work. *See* 17 U.S.C. § 106 (discussing five categories of rights). Section 504 of the Copyright Act provides that remedies for copyright infringement may include actual damages or profits and statutory damages. *See* 17 U.S.C. § 504. For example, statutory damages of up to $150,000 are available in cases in which the court determines "that infringement was committed willfully." *Id*. at § 504(c)(2). It is an "undisputed axiom that United States copyright law has no extraterritorial application." *See Subafilms*,, 24 F.3d at 1093. "Because the copyright laws do not apply extraterritorially, each of the rights conferred under the five section 106 categories must be read as extending "no farther than the [United States'] borders." *Id*. at 1094

Turning to the extraterritorial applicability of the Copyright Act, courts are split on whether the infringing act must occur wholly within the United States or if the infringing act only must not occur wholly outside of the United States. Put differently, the dispute is whether all parts of the infringing act must take place in the United States, or if it is sufficient that some part of the infringing acts take place in the United States. *Subafilms* and *Litecubes* both articulate the latter approach, holding that the Copyright Act extends to all infringing acts that do not occur entirely abroad. *See Subafilms*, 24 F.3d at 1098 ("we reaffirm that the United States copyright laws do not reach acts of infringement that take place entirely abroad"); *Litecubes*, 523 F.3d at 1371 ("[C]ourts have generally held that the Copyright Act only does not reach activities that take place *entirely* abroad") (citation removed) (emphasis in original). On the other hand, *L.A. News Service V. Reuters Television Int'l, Ltd.*, 149 F.3d 987 (9th Cir. 1998), requires at least one act of infringement to take place entirely within the United States. *Id.* at 990-91 (holding that where infringing videos were copied in New York and then transmitted abroad, copying the videos in New York qualified

7

as a domestic act of infringement even though the transmissions were extraterritorial). *Allarcom Pay Television Ltd. v. General Instrument Corp.*, 69 F.3d 381 (9th Cir. 1995) also requires that "one alleged infringement must be completed entirely within the United States." *Id.* at 387 (holding that the Copyright Act did not apply to authorizing infringing transmissions that occurred in Canada or broadcasting infringing material from the United States into Canada because the infringing acts were not complete until the signal was received in Canada).

The Court finds that in this case, the alleged act of direct copyright infringement – uploading a video from Canada to YouTube's servers in California for display within the United States – constitutes an act of infringement that is not "wholly extraterritorial" to the United States. Those cases holding that the Copyright Act requires at least one infringing act to occur entirely within the United States dealt with situations in which the infringing transmission was authorized or sent from within the U.S. but received and accessed abroad. *See Allarcom*, 69 F.3d 381; *Reuters Television*, 149 F.3d 987. In this case, however, we face the opposite scenario. The allegedly infringing act in this case began in Canada, where Defendant created his Grandma song video. Had Defendant stopped there, there is no doubt that the strict presumption against extraterritoriality would apply and Plaintiff would not have a claim. As noted in the Court's January 11, 2011 Order: "The creation of the video, however, occurred entirely in Canada, and thus cannot constitute copyright infringement under well-settled law. *See, e.g.*, *Doe v. Geller*, 533 F. Supp. 2d 996, 1003 (N.D. Cal. 2008) ('United States copyright laws do not apply extraterritorially.')."

The problem is that Defendant did not stop at the mere creation of the Grandma song video in Canada, but instead allegedly uploaded it to YouTube's California servers for display in the United States after agreeing to YouTube's Terms of Service agreement. Thus, according to the allegations in the SAC, Defendant's direct action led to the creation of a copy of the Grandma video on YouTube's servers in California, and to the subsequent viewing of the video by potentially thousands in the United States. Drawing all reasonable inferences in the Plaintiff's favor, as the Court must in ruling upon Defendant's motion to dismiss, Plaintiff's SAC does now sufficiently allege an act of copyright infringement within the United States. *See, e.g.*, *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 224 (S.D.N.Y.

8

2002) (denying defendants' motion to dismiss copyright claim based on factual allegations, and reasonable inferences in support thereof, that "allegedly infringing material was accessible from computers within the United States and that it is prepared to prove that the defendants' alleged copyright infringement had an effect within the United States.").

If acts beginning in the United States but culminating overseas are considered to be under the purview of the copyright laws in the country of destination, as *Allarcom* and *Reuters Television* concluded, then it is reasonable to conclude, at least in the context of a motion to dismiss, that the allegedly infringing act here falls within the purview of the Copyright Act. In a similar case, *Los Angeles News Service v. Conus Communications Co. Ltd.*, 969 F. Supp. 579 (C.D. Cal. 1997),[1] the court reached the same conclusion. *Conus* held that the Copyright Act covered a Canadian broadcaster who transmitted a signal containing material that infringed a United States copyright when that broadcast signal, intended for Canadian homes, was also picked up by 8,000 televisions in the United States. *Id*. at 582-83. The court in *Conus* held that the broadcaster could be held liable under the Copyright Act even though the broadcaster never intended for the signal to reach audiences in the United States as long as there was infringement within the United States. *Id*.

Here, as in *Conus*, Defendant's intent has no bearing on whether Plaintiff has stated a viable claim for relief under the Copyright Act. Thus, even if true, Defendant's protest that he did not know that YouTube's servers were in California and simply tried to upload his video only to youtube.ca, YouTube's Canadian web address, is of no moment to the issue of liability. *Id*. at 584 ("[defendant] contends that any allegedly infringing activity in the United States was unintended and unavoidable. Even if true, however, this is no defense to an infringement of copyright. Direct infringement does not require intent or any particular state of mind. *See* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.08 (1996) ('in actions for statutory copyright infringement, the innocent intent of the defendant will not constitute a defense to a finding of

---

[1] Although the Court finds that extraterritoriality is best understood as an element of the claim rather than a question of subject matter jurisdiction, the Court notes that it would reach the same conclusion if it were to address extraterritoriality as a jurisdictional matter. Indeed, *Conus* decided the issue of extraterritoriality as a question of subject matter jurisdiction and nevertheless concluded that the Copyright Act applied to the unintentional transmission of an infringing broadcast from Canada into the United States.

9

Case No.: 10-CV-01941-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1 liability').")[2]

2 In sum, Plaintiff has now sufficiently alleged an act of direct copyright infringement that is not "wholly extraterritorial" to the United States: Defendant's transmission of an infringing video from Canada to YouTube's servers in California, from which it was subsequently accessible and viewed by those within the United States for approximately two years. The Court therefore DENIES Defendant's motion to dismiss Plaintiff's copyright infringement claim.

### B. DMCA Misrepresentation

Plaintiff's second claim is that Defendant violated the DMCA by filing a false counter-notice with YouTube, which resulted in YouTube re-posting the allegedly infringing video. Defendant moves to dismiss Plaintiff's claim for misrepresentation under the DMCA for failure to state a claim under Rule 12(b)(6).

In 1998, Congress adopted the DMCA, 17 U.S.C. § 512, in part to address copyright concerns with user-driven media, such as the YouTube internet website. Section 512(c) lays out a detailed process allowing a copyright owner who observes infringing content on a website like YouTube to have the content taken down. The copyright owner must send a notification to YouTube ("takedown notice") identifying the offending video and asserting under penalty of perjury that the sender is the copyright owner and has a good faith belief that the video infringes the sender's copyrights. *See* 17 USC § 512(c)(3). YouTube, in order to retain its "safe harbor," then must remove the material from its servers or face infringement liability itself. *See* 17 USC § 512(c)(1)(C). At issue in Plaintiff's second claim is the misrepresentation provision of the DMCA, which provides:

> (f) Misrepresentations. Any person who knowingly materially misrepresents under this section--

---

[2] Defendant's mental state, however, is relevant to the issue of remedies. Section 504 of the Copyright Act provides that remedies for copyright infringement may include actual damages or profits and statutory damages. *See* 17 U.S.C. § 504. For example, statutory damages of up to $150,000 are available in cases in which the court determines "that infringement was committed willfully." *Id*. at § 504(c)(2). On other hand, "[in] a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $ 200." *Id*.

10
Case No.: 10-CV-01941-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

(1) that material or activity is infringing, or

**(2) that material or activity was removed or disabled by mistake or misidentification,**

shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, **as the result of the service provider relying upon such misrepresentation** in removing or disabling access to the material or activity claimed to be infringing, or **in replacing the removed material or ceasing to disable access to it.**

17 USC § 512(f) (bolded for emphasis).

Any person who makes a willful misrepresentation in a DMCA counter-notice may be liable for damages to an injured copyright owner if, as a result of the service provider relying upon such misrepresentation, the misrepresentation causes injury to the copyright owner. *See* 17 U.S.C. § 512(f). Plaintiff's complaint alleges that the following statements made in the counter-notice were misrepresentations: (1) "I have a good faith belief the material was removed due to a mistake or misidentification of the material to be removed or disabled;" and (2) "No sound was copied, no visuals were copied and no part of my Grandma video is a copy of any original work made by Elmo. My video's audio as performed by the Canadian Irish Rovers under Section 107 of the Copyright Act of 1976 of the United States allows for 'fair use'." SAC ¶ 54.  Defendant argues that these statements do not constitute misrepresentations.

Inexplicably, Defendant's briefing does not address the first alleged misrepresentation regarding his "good faith belief" of mistake or misidentification. Plaintiff contends that the statement constitutes a misrepresentation because, as alleged in the SAC, the communications between Plaintiff's representative and Defendant prior to the counter-notice plausibly establish that Defendant knew that the material had not been removed due to a mistake or misidentification. For example, the SAC alleges that Plaintiff's representative, Ms. Wendell, contacted Defendant several times to inform him that the Grandma song video infringed Plaintiff's copyright and that Defendant needed to obtain a license *prior to* Defendant's counter-notice. SAC ¶¶ 42, 45-46. The SAC

11

further alleges that Ms. Wendell explained to Defendant the difference between rights to a copyrighted sound recording and a copyrighted composition, thereby clarifying to Defendant how Plaintiff could have a copyright interest in a recording performed by the Irish Rovers. SAC ¶ 46. Finally, Plaintiff alleges that Defendant's e-mail stating "[g]o ahead, contact the Video site managers and get my video removed" indicates that Defendant acknowledged Plaintiff's right to have YouTube remove the video. SAC ¶ 49.

As pled in the SAC and with all reasonable inferences drawn in Plaintiff's favor, these allegations state a claim for misrepresentation under the DMCA. Plaintiff has made specific and plausible allegations that Defendant did not have a good faith belief that the Grandma song video was removed due to mistake or misidentification. Accordingly, inasmuch as Plaintiff alleges DMCA misrepresentation because of Defendant's statement that he had a "good faith belief the material was removed due to a mistake or misidentification," Defendant's motion to dismiss is DENIED.[3]

As for the second alleged misrepresentation regarding no copying of sound or visuals in Plaintiff's original work, Plaintiff alleges that Defendant did copy at least the audio portion of his video from the Irish Rovers. SAC ¶ 54. Moreover, according to the Plaintiff, the first assertion is a misrepresentation because the audio and visuals were both copied from other sources, and the second assertion is a misrepresentation because at the time that Defendant wrote the DMCA counter-notice Defendant was aware that the audio used a composition to which Plaintiff holds the copyright. The Court is not persuaded.

In context, Defendant's statement that "[n]o sound was copied, no visuals were copied," is not an actionable misrepresentation under the DMCA. As Plaintiff acknowledges, Defendant

---

[3] Although Defendant did not raise the issue in the pending motion, Plaintiff must, of course, still establish that the alleged misrepresentation caused him injury. *See* 17 U.S.C. § 512(f). Moreover, the Court notes that the parties have not directly addressed a potential fair use defense. Fair use of a copyrighted work does not constitute copyright infringement, and in order to proceed under the DMCA, a copyright owner must evaluate whether the material made fair use of the copyright. *See Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150, 1154 (N.D. Cal. 2008) ("in order for a copyright owner to proceed under the DMCA with 'a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law,' the owner must evaluate whether the material makes fair use of the copyright."). Presumably, the parties will address these issues of injury and fair use in later proceedings.

immediately follows that statement by remarking that the video's audio was performed by the Canadian Irish Rovers. Plaintiff did not try to hide or misrepresent his use of the Irish Rovers' audio in the Grandma song video. In fact, Plaintiff did just the opposite, expressly stating that his "video's audio as performed by the Canadian Irish Rovers under Section 107 of the Copyright Act of 1976 of the United States allows for 'fair use'." Moreover, Plaintiff has failed to establish that Defendant's statement that "no part of [the] Grandma video is a copy of any original work made by Elmo" was in any way a misrepresentation. Defendant's statement, even on Plaintiff's own allegations, is factually accurate: the Grandma song video does not contain a copy of "any original work made by Elmo." The fact that Plaintiff is a co-owner of the musical composition to the Grandma song does not morph Defendant's statement into a misrepresentation. Defendant made no representations as to Plaintiff's rights or to his own rights in the work. Accordingly, Plaintiff has failed to state a claim for misrepresentation under the DMCA based on the statement that "no part of my Grandma video is a copy of any original work made by Elmo," and Defendant's motion to dismiss on this ground is GRANTED.

### C. Declaratory Relief

Finally, Defendant moves to dismiss Plaintiff's third and last claim for declaratory relief. Defendant argues that this claim should be dismissed because Plaintiff has not stated an underlying claim for copyright infringement or DMCA misrepresentation, and thus there is no actual case or controversy meriting declaratory relief. As the Court finds that Plaintiff has stated claims for copyright infringement and DMCA misrepresentation, Plaintiff's claim for declaratory relief also survives at this time. *See, e.g., Axon Solutions, Inc. v. San Diego Data Processing Corp.*, Case No. 09-CV-2543-JM, 2010 U.S. Dist. LEXIS 12506, *7 (S.D. Cal. Feb. 12, 2010) (holding that claim for declaratory relief based on copyright infringement survives a motion to dismiss when the underlying claim survives.). Thus, Defendant's motion to dismiss the declaratory relief claim is DENIED.

### III. Conclusion

For the reasons explained above, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion to dismiss. The August 25, 2011 motion hearing is vacated. The August 25, 2011 case management conference remains as set.

**IT IS SO ORDERED.**

Dated: August 22, 2011

_Lucy H. Koh_
LUCY H. KOH
United States District Judge